### B. B. HILL MFG. CO. v. SAWYER–BOSS MFG. CO. et al. (two cases).

(Circuit Court, E. D. New York. November 15, 1901.)

TRADE-MARKS—INFRINGEMENT—NAME USED TO IDENTIFY ARTICLE WITH PATENT.
Where the manufacturer of a patented article, in connection with the marking thereon, showing the date of the patent, gave the name of the patentee, and also an arbitrary name to the article, but without giving its own name as manufacturer, so that such arbitrary name merely identified the article with the patent, such marking did not constitute a trade-mark, but, on the expiration of the patent, another manufacturer has the right, not only to make and sell the article in the same form, but also to mark it with the same or a similar name, where, in connection with such name, it places thereon its own name as manufacturer, marked with sufficient prominence to clearly distinguish the article from those made by the original manufacturer.

William E. Warland, for complainant.
H. Albertus West, for defendants.

THOMAS, District Judge. In the above actions the complainant seeks to restrain the defendants from infringing designated trademarks, and from unfair competition in the sale of certain dating machines. The complainant is the assignee of letters patent for certain dating machines, pursuant to which letters it has, since 1884, through itself and others, caused dating stamps to be sold. Upon the circular head of one style of said stamps was cut,

And upon the circular head of another style of said stamps was cut,

The defendants, at the times stated in the bill, but subsequent to the expiration of said letters, have been manufacturing and selling a dating stamp in exact similitude to that of the complainant, save that upon the head of one type of such stamps appeared the marks,

And upon the head of the other type of such stamps appeared the marks,

Although there is no evidence that any person has been deceived in the purchase of such stamps, the defendants have intended to make a stamp which, in construction and outward appearance and similarity of name, was calculated to confuse the stamps manufactured by the defendants with stamps in fact manufactured by the complainant. In defense of such conduct, the defendants urge that the "Centennial Dater" and the "American Dater" are not trade-marks, but are terms identifying the stamps severally with the letters patent to which reference has been made, and that with the expiration of such patents the defendants and the public were permitted to manufacture daters in mechanical and exterior similitude to the daters of the complainant, and also to use the very names that the complainant had used while such goods were protected by the patent. It will be observed that upon the complainant's dater the name of the manufacturer or seller did not appear during the life of the patents, so as to indicate that the marks on the Centennial Dater or on the American Dater are trade-marks used by the complainant, B. B. Hill, personally, or by any manufacturer or dealer, but that such terms have been used simply on B. B. Hill's patent daters, as patented articles. Within the last two years the word "Hill's" has been added to the words "Centennial Dater" on another part of the Centennial Daters, but no mark has been used by the defendant. It will be observed that on the head of the daters sold by the defendants the name of the seller is made a distinct part of the inscription. It is urged that upon such a state of facts the defendants are justified by Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Rahtjen's American Composition Co. v. Holzappel's Composition Co., 41 C. C. A. 329, 101 Fed. 257; Holzapfel's Compositions Co. v. Rahtjen's American Composition Co., 97 O. G. 958 (decided Oct. 21, 1891). In the Singer Case it was held:

"Where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created; and, where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines, by referring to it in advertisements and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights or to deceive the public, and therefore that the name must be accompanied with such indications that the thing manufactured is the work of the one making it as will unmistakably inform the public of that fact."

112 F.—10

The defendants' name, marked with sufficient prominence upon the plate of each machine, sufficiently distinguishes it from that manufactured by the complainant. However, the evidence shows that in the sale of the defendants' daters a rubber cap, suitable to be placed over such plate, has been given away by defendants with daters sold. It also appears that Stewart & Co., who are the controlling persons in the defendant corporation, and who are general dealers in such articles, attempted, in an instance (that of the sale to the Long Island Railroad Company), to fill, in large part, an order for Centennial Daters with defendants' machines. While the defendants give away the rubber caps, that they may be used to protect the hand in the act of working the stamp, the complainant sells such rubber caps, which are used for the same purpose. While the use of the cap may conceal the defendants' name, there is no evidence that the defendants in selling the machines have used the cap to conceal the inscription, or that any different policy is observed by themselves or other dealers, whether complainant or defendants' device be exposed for sale, nor does it appear that when Stewart filled the order for the Long Island Railroad Company he did more than to send certain of the defendants' daters when the complainant's were ordered, and the substitution was quickly detected. Under the state of facts presented, the defendants seem to find legal protection from an obvious intention to copy, with approximate accuracy, the complainant's goods, in the decision of the court above stated.

The conclusion reached has not made it necessary to consider separately the liability of the persons sued individually, but all the defendants have been regarded as a single person. There must therefore be a decree dismissing the bill in each action.